IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 11, 2012

## STATE OF TENNESSEE v. MELL THOMAS BRUTON, aka MEL T. BRUTON

**Appeal from the Criminal Court for Davidson County**
**No. 2005-C-2214    Mark J. Fishburn, Judge**

_____

**No. M2011-02548-CCA-R3-CD - Filed October 19, 2012**

_____

The defendant, Mell Thomas Bruton, aka Mel T. Bruton, appeals the revocation of his community corrections sentence, arguing that the trial court abused its discretion in revoking the sentence based on the defendant's unauthorized trip out of state when the trip was necessitated by a family emergency. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the appellant, Mell Thomas Bruton, aka Mel T. Bruton.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Rob McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

In August 2005, the Davidson County Grand Jury returned an indictment charging the defendant with thirty-four counts of identity theft trafficking and one count of criminal simulation. On June 8, 2006, the defendant pled guilty to the first five counts of the indictment and was sentenced as a Range III, persistent offender to concurrent terms of twelve years for each offense, to be served on community corrections and concurrently to a

suspended sentence in another case. Pursuant to the terms of his negotiated plea agreement, the remaining counts of the indictment were dismissed.

On September 9, 2011, a revocation warrant was issued alleging that the defendant had violated the terms of his community corrections sentence by not reporting since August 23, 2011; by not providing proof of employment since his March 11, 2011 reinstatement to the program; by not making court costs or supervision fee payments since his March 11, 2011 reinstatement to the program; and by not performing required community service work since his March 11, 2011 reinstatement to the program.

At the November 9, 2011 revocation hearing, Michelle Castill, the supervisor of the defendant's community corrections program, testified that after the defendant's requests to visit family in Indiana were repeatedly denied by the court, the defendant stopped reporting. She said he was eventually arrested in Indiana and extradited to Tennessee.

On cross-examination, she testified that the defendant reported regularly between March 11, 2011, when he was reinstated to the program, and August 23, 2011. His drug tests had been clean since his reinstatement and he had not, to her knowledge, been arrested or received any citations. Castill acknowledged that the defendant's uncle had been the subject of "a lot of the testimony" at the previous revocation hearing held in December 2010 and that the defendant had brought Castill documentation from the Veterans Administration to show that he was serving as "some form of a conservator" for his uncle. Among other things, the document stated that the uncle was unable to live independently and that the defendant had "been identified as the only family member capable and available to assist with patient care."

When defense counsel commented that the defendant was "the only living relative" available to care for the uncle, the trial court observed that when the defendant had earlier requested permission to be placed on probation in Indiana, "he was going to live with a very healthy and lively sister, and [the defendant's] cousin was down here to testify to all that."

During his testimony, the defendant explained to the trial judge that the sister he had mentioned in the earlier hearing was a half-sister and therefore was not "blood kin" to his uncle. Similarly, the cousin who had testified on his behalf was unrelated by blood to his uncle. He testified that he had been granted a furlough in April 2011 to go to Indianapolis to care for his uncle. He said he returned from that visit when he was supposed to, but he then received a telephone call informing him that his uncle had been transported to the hospital emergency room. Although he pleaded with Ms. Castill for permission to return to Indianapolis, and asked to address the court directly, she informed him that his request was denied. Because his uncle was "all [he had] left," he went to Indianapolis without permission and then stayed to clean up his uncle's home, which had been condemned by the health

department, so that his uncle could return to the home upon his release from the hospital. The defendant further testified that he did not have a job and that his claim for disability was pending. Defense counsel acknowledged that the defendant was behind in his court costs and supervision fees, but he also pointed out that the defendant was unable to pay costs and fees without a job.

At the conclusion of the hearing, the trial court revoked the defendant's community corrections sentence and reinstated his original sentence in the Department of Correction, with credit given for his jail service following previous revocations. Among other things, the court found that the defendant could have "long since been off Community Corrections" and his probation transferred to Indianapolis had he complied with the requirements of the program, that this was the defendant's fourth violation of his sentence, and that the defendant "consistently and willfully refuse[d] to comply with the requirements of the Community Corrections Program." This appeal followed.

## ANALYSIS

The defendant contends that the trial court abused its discretion by revoking his community corrections sentence because his violations were selfless acts, which he made because "he felt he had no choice but to save his uncle from [an] almost certain [and lonely] death." The State argues that the trial court properly revoked the defendant's community corrections sentence based on the defendant's history of noncompliance with the program and his failure to follow the conditions of his sentence. We agree with the State.

A trial court may revoke a community corrections sentence upon finding by a preponderance of the evidence that an offender violated the conditions of his suspended sentence. See Tenn. Code Ann. § 40-36-106(e)(3)-(4) (2006); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). The trial court's revocation of a community corrections sentence will be upheld absent an abuse of discretion. Id. An abuse of discretion occurs if the record contains no substantial evidence to support the conclusion of the trial court that a violation of community corrections has occurred. See State v. Gregory, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997).

It is undisputed that the defendant violated the conditions of his community corrections sentence by his unauthorized move and his failure to report or pay court costs and supervision fees. The trial court, which found that the defendant had been "using his uncle as a crutch" for the past three or four years, obviously did not give credence to the defendant's claims that he had no choice other than to violate his community corrections sentence in order to save his uncle's life. The record supports this determination. We, therefore, conclude that the trial court did not abuse its discretion in revoking the defendant's

community corrections sentence.

## <u>CONCLUSION</u>

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's community corrections sentence and ordering that he serve his original sentence in the Department of Correction.

_____
ALAN E. GLENN, JUDGE